**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| JOONKO DIVERSITY INC.,[1] | ) | Case No. 24-11007 (MFW) |
| Debtor. | ) | |
| JOONKO DIVERSITY INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. No. 25-_____ (MFW) |
| ILIT RAZ, | ) | |
| Defendant. | ) | |

**COMPLAINT**

Joonko Diversity Inc. ("**Joonko**" or the "**Company**"), the debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), hereby brings this complaint (the "**Complaint**") against Ms. Ilit Raz ("**Raz**"). In further support of the Complaint, the Debtor respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. Raz spun a siren song for years, creating the illusion of a Company with hundreds more customers and millions of more dollars than reality to lure in investors. Raz knowingly inflated the profitability of Joonko, the number and quality of Joonko's clients, the number of applicants in Joonko's pipeline, and the sophistication of Joonko's technology. She forged documents and signatures and fabricated testimonials from non-existent customers. And she lied

[1] The last four digits of Joonko Diversity Inc.'s federal tax identification number are 8337. Joonko Diversity Inc.'s service address is 157 Columbus Ave., 4th Floor, New York, NY 10023.

to the Company's stockholders and the Joonko Board of Directors (the "**Board**") in public and private communications.

2. In so doing, Raz breached her fiduciary duties to Joonko and its stockholders and broke the law, all while personally profiting. Now the Company is in financial ruin and in a chapter 11 bankruptcy proceeding, and Raz has been indicted by the Department of Justice and sued for securities fraud by the Securities and Exchange Commission. This Complaint seeks to hold her accountable to the Company and the stockholders she defrauded.

## PARTIES

3. Joonko is a corporation incorporated under the laws of the State of Delaware. The Company worked on the development of an artificial intelligence-powered platform to help companies recruit diverse employees, claiming to utilize machine learning to match qualified candidates from underrepresented communities with job opportunities.

4. Raz is an individual citizen and resident of Israel and one of three founders of Joonko. In 2018, Raz's co-founders left the Company, leaving Raz as the CEO and sole Board member.[2] Raz's responsibilities included overseeing the build out of Joonko's platform, business development with customers, and raising money from investors. In those positions, Raz wielded absolute authority and control over the Company's affairs, including Joonko's bank accounts.

## STATEMENT OF FACTS

5. Between 2019 and 2022, the Company completed, under Raz's leadership, three funding rounds (Series Seed, Series A, and Series B) which raised in the aggregate in excess of $29.5 million in capital from outside investors.

---

[2] Additional members were added to the Board in June 2022.

6. During the funding rounds, Raz marketed Joonko as a technology platform that used artificial intelligence ("**AI**") to match its customer firms with diverse job candidates from underrepresented backgrounds to help firms achieve their diversity, equity, and inclusion goals. Raz claimed that Joonko's platform worked by creating a pool of diverse job candidates from pre-qualified candidates and using artificial intelligence to match those candidates with employers, targeting U.S. companies with at least 500 employees and 30 job openings at any given time.

7. Throughout the fundraising process, Raz made false and misleading representations about the quantity and quality of Joonko's clients, the number of candidates Joonko had in its talent pool, Joonko's revenue, and the advancement of its platform and technology to lure in investors and entice current stockholders to invest further.

8. Raz promoted the Series Seed Offering in early 2019 through oral and written communications to potential investors, and successfully raised at least $2.4 million for Joonko.

9. Raz promoted the Series A Offering in early 2021 through oral and written communications to existing stockholders and potential new investors, and successfully raised at least $6.7 million for Joonko.

10. Raz promoted the Series B Offering in and around June 2022 through oral and written communications to existing stockholders and potential new investors, and successfully raised at least $17 million for Joonko.

11. In all of these fundraises, Raz was the primary contact for investors.

**Raz Misrepresents the Quantity and Quality of Joonko's Customers.**

12. Raz repeatedly misrepresented the quantity and quality of Joonko's customers and provided stockholders with falsified testimonials from fake customers praising Joonko's effectiveness.

13. For example, in February 2021, Raz sent marketing presentations to stockholders and potential investors (the "Preliminary Round A Presentation," a true and correct copy of which is attached as **Exhibit A**). These presentations stated that Joonko had 120 companies on its platform and highlighted a number of Fortune 500 companies that were supposedly working with Joonko. *Id*. As Raz knew, these statements were false. Joonko had far fewer than 120 customers on its platform, and the purported customers had no business agreements with Joonko. As Raz later admitted, Joonko had no more than 30 companies on its platform, and at least half of the customers Raz reported as Joonko customers were never paying customers.

14. In February 2021, Raz sent an email to stockholders and potential investors (the "February 2021 Email," a true and correct copy of which is attached as **Exhibit B**), stating that "[o]ur pipeline includes more and more F[ortune] 500 companies". Raz knew this statement was misleading because Joonko did not have *any* Fortune 500 companies as customers. She also knew there were few, if any, Fortune 500 companies in the Company's pipeline.

15. In a February 2022 presentation sent to stockholders (the "A-Round Presentation," a true and correct copy of which is attached as **Exhibit C**), Raz included fake testimonials that she conjured up, ascribing positive quotes about Joonko to entities that were not customers of Joonko and had never said the purported quotes. In the same time period, Raz sent stockholders fake customer lists and doctored bank statements that she edited to reflect incoming

revenue from fake customers, including Fortune 500 companies with no relationship with Joonko.

16. Because of her role as CEO, including her responsibility for business development, her control over Joonko's bank accounts, and her knowledge of the Joonko platform, Raz knew that the customer lists and bank statements she provided to stockholders were fake.

17. Raz also falsely touted the quantity and quality of Joonko's customer base publicly while she was raising money for Joonko. For example, on January 6, 2023, Raz claimed on a YouTube public podcast that Joonko was working with over 200 customers and highlighted certain customers and exemplary customer companies. And Raz's public LinkedIn profile, as of June 28, 2023, listed several Fortune 500 companies as Joonko's customers.

18. Raz knew her statements on YouTube and LinkedIn were false. She was responsible for business development and was aware that Joonko had far fewer than 200 customers and that the purported customers, including the Fortune 500 companies, had no relationship with Joonko.

19. In 2023, facing scrutiny about Joonko's performance, Raz created fake contracts that appeared to be between Joonko and purported Joonko customers. Raz often used the names of real employees at purported Joonko clients as signatories to the fake contracts. Raz then forged electronic signatures on the contracts with the purported clients' names using DocuSign. Raz subsequently provided those falsified contracts to stockholders and the Board to defend Joonko's performance.

20. Raz's statements about the quantity and quality of Joonko's customer base, both publicly and privately to stockholders and the Board, misled and damaged stockholders and the Company.

**Raz Misrepresents the Number of Candidates on the Joonko Platform.**

21. In an email to a potential customer in December 2019 (the "Zillow Email," a true and correct copy of which is attached as **Exhibit D**), Raz stated that Joonko had more than 40,000 candidates in its talent pool. At the time, Raz knew from her role in platform build out and business development, that Joonko had significantly fewer, if any, candidates on its platform in 2019.

22. In the Preliminary Round A Presentation, Raz claimed in a section titled "US Largest Pool of Qualified Underrepresented Candidates" that Joonko had 102,970 active monthly candidates on its platform. Ex. A. The slide included a map with a specific number of candidates on the Joonko platform in each state, representing, for example, that there were 4,589 candidates in New York City. *Id*. As Raz knew, Joonko had significantly fewer, if any, candidates on its platform in 2021.

23. In the A-Round Presentation, Raz claimed that Joonko had 185,000 active monthly candidates on its platform in 2021. Ex. C. Again, Raz knew that Joonko had significantly fewer, if any, candidates on its platform in 2021.

24. And at the Q3 2022 Board meeting, Raz gave a PowerPoint presentation (the "Q3 2022 Board Deck," a true and correct copy of which is attached as **Exhibit E**) claiming that Joonko had 251,000 active candidates on its platform. Raz was lying to the Board. The number of candidates was never that high.

25. Raz's misrepresentations about the number of candidates on the platform to stockholders misled and damaged stockholders and the Company.

**Raz Misrepresents Joonko's Revenue.**

26. In the Preliminary Round A Presentation, Raz falsely claimed that Joonko's annual recurring revenue was projected to increase from $520,000 to $5.3 million from the end of 2020 through the end of 2021, and then up to $12 million by the end of 2022 and $22.8 million by the end of 2023. Ex. A. Raz also projected revenue in 2022 to rise to $4.1 million and up to $8.1 million by the end of 2023. *Id*.

27. As Raz knew because of her access to Joonko's bank accounts and financial information, these projections were false and massively overinflated. Joonko's annual recurring revenue in 2020 did not exceed $100,000 and, as discussed above, Joonko's meager customer base and pipeline were insufficient to support her projected revenue growth.

28. In an email dated January 17, 2022 (the "January 2022 Email," a true and correct copy of which is attached as **Exhibit F**), Raz told stockholders that Joonko had closed $720,000 in sales in the fourth quarter of 2021 and had hit $1.84 million revenue in 2021. And in the A-Round Presentation, Raz claimed Joonko had $1.94 million in annual recurring revenue in 2021, an improvement from $250,000 in 2020. Ex. C. Raz knew these numbers were false. Neither Joonko's sales nor revenue during 2021 exceeded $100,000.

29. In an email dated April 3, 2022 (the "April 2022 Email," a true and correct copy of which is attached as **Exhibit G**), Raz told stockholders that Joonko had closed $1.255 million in sales in the first quarter, hitting over $3 million in annual recurring revenue. But, Raz knew that, in all of 2022, neither Joonko's sales nor annual recurring revenue exceeded $100,000.

30. Also in April 2022, Raz provided stockholders with a falsified bank statement (a true and correct copy of which is attached as **Exhibit H**) that purported to show large incoming deposits from customers from January 2021 through April 2022, as well as a then-current account balance of $3.7 million and a 2021 account balance as high as $6.9 million. But Raz had electronically falsified the bank statement and knew that at least $400,000 of the customer revenue reported on the falsified bank statement was never received and the account had a then-current balance of under $1 million and had never been over $5.6 million.

31. And in the Q3 2022 Board Deck, Raz claimed that Joonko had $7.2 million and $5.94 million in annual recurring revenue at different points in the presentation. Ex. E. Neither number was true, and the real number was lower than $100,000.

32. Raz's representations about Joonko's revenue misled and damaged stockholders and the Company.

**Raz Misrepresents the Sophistication and Capabilities of Joonko's Platform.**

33. Raz knowingly misled stockholders about Joonko's platform's use of AI and automation, as well as its ability to connect customer companies' applicant tracking systems to effectively find diverse and underrepresented candidates for Joonko's customers.

34. For example, in the A-Round Presentation, Raz claimed that Joonko used AI-based technology and described the Joonko platform as an "automated recruiting solution." Ex. C.

35. In a publicly available interview with the website Unite AI in March 2023, Raz claimed that Joonko's "proprietary algorithm first uses natural language processing and computer vision to scan public data on the candidates that are referred to us." Raz also claimed that Joonko used "machine learning to improve the matching process as candidates select the

roles they're interested in" and that the matching of candidates was "automated from end to end."

36. Joonko did not use these processes. Raz oversaw the build out of the Joonko platform and knew that the platform did not work as she described. Joonko did not have the aforementioned capabilities to connect customers with diverse candidates, and its technology was not as advanced as Raz claimed.

**The Board Discovers Raz's Fraudulent Scheme and the Fallout.**

37. In connection with the Series B funding in June 2022, the Board expanded to include representatives of stockholders and the Company was required to appoint a Chief Financial Officer.

38. In early 2023, members of the Board became suspicious of Raz when the CFO of Joonko resigned shortly after joining the Company, complaining that Raz, as CEO, had never given her access to the Company's records. The stockholders asked Raz to provide updated customer lists, account statements, and customer contracts. In response, Raz provided falsified bank statements and fake contracts.

39. On June 21, 2023, the Board confronted Raz about the fraudulent documents. In a three-hour, recorded interview in front of Board members and Company counsel, Raz admitted that she had forged the bank statements and contracts. A true and correct copy of the transcript of that interview is attached as **Exhibit I**. She further admitted that she lied about the Company having over 100 customers, and that the number was in fact closer to 30. She also admitted to lying about the amount of revenue that Joonko was generating and the amount of money in Joonko's bank accounts. Immediately, the Board insisted that Raz resign. So, on the same day as the interview, Raz resigned as CEO and as a member of the Board.

40. Raz profited substantially from her scheme to the detriment of Joonko and its stockholders. Raz received cash and stock compensation then worth millions of dollars, and sold millions of her Joonko shares in secondary market sales for millions of dollars. By contrast, Joonko's stockholders suffered substantial harm as a result of Raz's fraud, to the point where Joonko was forced to shutter its business, and has filed for bankruptcy protection. Raz's lies caused the Company to spend millions of dollars on a largely non-existent business, damaging the Company and its stockholders.

41. On June 5, 2024, the U.S. Department of Justice indicted Raz on charges of securities fraud and wire fraud in the Southern District of New York. And on June 11, 2024, the Securities and Exchange Commission filed a complaint in the Southern District of New York for two violations of securities laws, seeking disgorgement of Raz's ill-gotten gains, civil monetary penalties, and a permanent prohibition on Raz serving as an officer or director of any company with certain securities.

**COUNT I**
**(Breach of Fiduciary Duties)**

42. Debtor incorporates each allegation above as if fully set forth herein.

43. As a member of the Board and CEO of Joonko, Raz owed the Company and its stockholders fiduciary duties of loyalty and care, including the duty of candor and the duty of disclosure.

44. Raz breached her fiduciary duties by engaging in the wrongful conduct alleged herein, including by violating securities laws, lying to stockholders and the Board, and falsifying Company documents.

45. As a proximate cause of Raz's wrongful conduct, Joonko and its stockholders have sustained damages.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully prays for relief and an award as follows:

a. Awarding the Company disgorgement and damages resulting from Raz's misconduct in an amount to be determined;

b. Awarding pre-award interest on any award of damages;

c. Awarding the Company the costs of this action, including but not limited to attorney's fees; and

d. Awarding such other and further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: Wilmington, Delaware
February 13, 2025

**MCDERMOTT WILL & EMERY LLP**

*/s/ David R. Hurst*
David R. Hurst (I.D. No. 3743)
Kevin M. Regan (I.D. No. 6512)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone: (302) 485-3900
Facsimile: (302) 351-8711
dhurst@mwe.com
kregan@mwe.com

- and -

Joel Haims
One Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
jhaims@mwe.com

- and -

Catherine Lee
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
clee@mwe.com

*Counsel for Debtor and Debtor-in-Possession*